<pre>
 1                     UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3

 4    THE UNITED STATES OF AMERICA      )
                                        )
 5                                      )
                                        )
 6    vs.                               )   CR No. 11-10260-NMG
                                        )
 7                                      )
                                        )
 8    AARON SWARTZ                      )

 9

10    BEFORE:  THE HONORABLE NATHANIEL M. GORTON

11

12                         STATUS CONFERENCE

13

14


15         John Joseph Moakley United States Courthouse
                         Courtroom No. 4
16                       One Courthouse Way
                         Boston, MA 02210
17              Friday, December 14, 2012
                         2:08 p.m.

18

19

20
                   Cheryl Dahlstrom, RMR, CRR
21                    Official Court Reporter
           John Joseph Moakley United States Courthouse
22              One Courthouse Way, Room 3209
                       Boston, MA 02210
23           Mechanical Steno - Transcript by Computer

24

25
</pre>

1    APPEARANCES:

2        OFFICE OF THE UNITED STATES ATTORNEY
         By:  Stephen P. Heymann, AUSA
3        One Courthouse Way
         Boston, Massachusetts 02210.
4        On Behalf of the Government.

5        CLEMENTS & PINEAULT, LLP
         By:  Michael J. Pineault, Esq.
6        24 Federal Street
         Boston, Massachusetts 02110.
7        - and -
         KEKER & VAN NEST LLP
8        By:  Elliot R. Peters, Esq., and
               Daniel E. Purcell, Esq. (By Telephone)
9        633 Battery Street
         San Francisco, California 94111
10       On Behalf of the Defendant.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE CLERK:  United States vs. Aaron Swartz, Criminal

3    No. 11-10260.  Court is in session.  You may be seated.

4              THE COURT:  Good afternoon, counsel.  I understand --

5    do we have somebody on the phone?

6              MR. PURCELL:  Yes, your Honor.

7              THE COURT:  Okay.  And that would be?

8              MR. PURCELL:  This is Dan Purcell from Keker & Van

9    Nest.  I'm one of the lawyers representing the defendant, Aaron

02:08 10   Swartz.

11              THE COURT:  Good afternoon, Mr. Purcell.  In the

12    courtroom we have -- starting on my left?

13              MR. HEYMANN:  Your Honor, Steve Heymann on behalf of

14    the government.

15              THE COURT:  Mr. Heymann.

16              MR. PETERS:  Good afternoon, your Honor.  Elliot

17    Peters, appearing on behalf of Aaron Swartz, who is present and

18    sitting right here.

19              THE COURT:  Mr. Peters and Mr. Swartz.  And?

02:09 20              MR. PINEAULT:  Good afternoon, your Honor.  Michael

21    Pineault from Clements & Pineault, also for Aaron Swartz.

22              THE COURT:  Mr. Pineault, good afternoon to you.

23              We are here at the request of -- the joint request of

24    counsel that we have a status conference to determine whether

25    or not an evidentiary hearing on the several pending motions to

1    suppress would be appropriate and, if so, what the scope of

2    such a hearing might be.

3         I have reviewed the papers that have been filed in

4    this regard, and I think maybe I could start by asking Mr.

5    Peters to explain to the Court why it is that we need such a

6    hearing and on what particular issues do you feel there needs

7    to be evidence presented?

8         MR. PETERS:  Thank you, your Honor.  I think that

9    there's three issues that require an evidentiary hearing.  One

02:10 10  is, there's a motion that we filed relating to a 34-day delay

11   in obtaining search warrants to search a computer and two

12   electronic storage devices.  The government has responded with

13   various factual arguments about why that delay is reasonable.

14   I suppose your Honor could grant that motion without a hearing,

15   but in order to entertain the government's arguments and

16   explanations, I think that there would have to be fact-finding

17   about the claims of reasonability with respect to that delay.

18   That's one.

19        Two is, there's an argument that's been put forth by

02:10 20  the government that Mr. Swartz was a trespasser on the MIT

21   campus, both in the context of using the MIT computer network

22   as a guest and also in being physically present in a building

23   and in a room on the campus.  That is a factual issue, also,

24   that would require the taking of testimony about MIT's policies

25   and procedures.  It has a somewhat unusual open policy to its

1   campus.  It has an open computer network.  So we believe the

2   testimony would prove that the government's claim that he was a

3   trespasser is not accurate in the context of this search

4   warrant.

5        And then the third topic, your Honor, would be the

6   issue of whether Mr. Swartz had an objectively reasonable

7   expectation of privacy in a computer that was left on the MIT

8   campus, in a room on the MIT campus.  The government takes the

9   position that no one could have such an objectively reasonable

02:11 10   expectation of privacy.  And for some of the reasons that -- it

11   overlaps a little bit with some of the trespasser issues.  It's

12   our view that he did, and certainly could have had, an

13   objectively reasonable expectation of privacy based on how the

14   MIT campus works and so on.  So I think those are the three

15   main issues that --

16        THE COURT:  How do you respond to the government's

17   position that this is really just a pretrial in which you get a

18   free discovery of all of the government's evidence?

19        MR. PETERS:  Well, I guess the simplest way to respond

02:12 20   is to say that that's not the way we're thinking.  We filed

21   these motions because we believe that they have merit.  And I

22   think the first one I mentioned -- I think it would be possible

23   for the Court to grant our motion about the 34-day delay in

24   seeking a warrant without having a fact hearing, but I can

25   represent to your Honor that we're here to litigate these

1    motions to suppress and not for some reason that has nothing to

2    do with that.  And, obviously, in a suppression hearing, if

3    they objected and your Honor concluded that we were pursuing

4    lines of inquiry unrelated to the suppression motion, which we

5    have no intention of doing, your Honor would sustain an

6    objection and tell us what to do, and that would be the end of

7    that.  I think there's very little risk of that, and that's

8    certainly not our intention.

9         The investigation in this case took place in a way

02:13 10  where the government chose not to seek court approval for a lot

11   of its actions.  They finally got a warrant much later, but

12   they didn't get any type of Title III or warrant or anything

13   beforehand, and so it can't really be a surprise to them that

14   we would assert our rights to seek to suppress some of the

15   fruits of these seizures which took place without judicial

16   authorization.  And that's all we seek to do, your Honor.

17        THE COURT:  Mr. Heymann, why shouldn't I allow such a

18   hearing to the extent that the defendants have requested it?

19        MR. HEYMANN:  Your Honor, if I may, let me address

02:14 20  them sequentially.  The first, with respect to the delay on the

21   search warrant, I won't reargue the government's position that

22   there is no need to have a hearing on that simply because the

23   evidence was seized and held as physical objects and as

24   evidence, and the Court can make its decision based solely on

25   that point.  And I think that point is uncontested.

1        But to the extent that the Court wishes additional

2   fact-finding on the question of why there was that 34-day

3   period and for the Court to have a complete picture as it makes

4   its ruling, that set of facts is a very modest set of facts and

5   quite constrained.  It's the question of putting an agent on

6   the stand and saying what's going on in that intervening time.

7   As the government said, and we'll argue later, it's not

8   necessary to reach that point, but it's a fairly constrained

9   set of facts.

02:15 10        With respect to where the hearing would move from a

11   hearing that is directed to factual matters that would inform

12   the Court to a pretrial trial of the case is on this question

13   of the trespasser.  And I want to distinguish two parts here:

14   the question of whether or not there was legitimate access to

15   the physical campus or the physical room on the physical campus

16   and the question of whether or not there was legitimate access

17   to the network.

18        There is no -- because the government is not going to

19   seek to offer in evidence the -- what has been alternately

02:15 20   referred to as the packet capture, the mirroring of the

21   communications going back and forth -- the monitoring of the

22   communications going back and forth to the laptop for about a

23   day and a half -- because the government is not going to seek

24   to offer that, because it had no -- while there unquestionably

25   is a couple of emails saying, We've seen this and we've seen

1    that, the government -- I literally don't have a very good idea

2    what was even in that packet capture.  Because it was not used

3    in the investigation -- it wasn't used in any further search or

4    warrant or collection -- there is no reason to address that

5    packet capture.

6         We candidly addressed it because we wanted to show

7    what MIT was doing was perfectly proper, perfectly legitimate;

8    what the government was doing was perfectly proper, perfectly

9    legitimate.  But that packet capture evidence is not going to

02:16 10    be offered.  What is derivative from it is not going to be

11    offered.  There isn't anything derivative from it.  That's why

12    it's not going to be offered.

13         So the sole question there is whether or not the

14    routing, addressing information, the stuff that looks like pen

15    register information except it's a computer, that's routinely

16    collected by MIT and routinely collected on their network, can

17    be provided.  It's the government's position that that is

18    wholly resolvable as a matter of law.  It's been resolved by

19    Forrester in the Ninth Circuit as a matter of law.  It was

02:17 20    resolved by Smith.  It was resolved by Miller by the Supreme

21    Court.

22         Once you do that, there is the whole extensive part of

23    the trial, which is what -- how did he get on the network?  Was

24    it legitimate?  Was it illegitimate depending on whose

25    perspective you're looking at it from?, doesn't get replayed.

1   That part, the Court does not need an evidentiary hearing on

2   because, for all the reasons we argue in our brief, that's not

3   necessary.

4        THE COURT:  But you're not opposing an evidentiary

5   hearing as to whether there was a physical trespass in the

6   so-called closet or on the premises of MIT?

7        MR. HEYMANN:  What I was going to go on to say is that

8   what is -- what remains, which is his third question, the

9   reasonable expectation of privacy of the laptop and the hard

02:18 10   drive and the closet, the question of:  What did the government

11   do when it got -- how did -- the government goes in.  It sees

12   -- it's shown a box by MIT employees.  It goes under the box.

13   It looks at things.  What is the government doing that is -- as

14   Mr. Peters says, there is an activity that either is or is not

15   a Fourth Amendment cognizable search going on then.  And if it

16   is a Fourth Amendment cognizable search, there either is or is

17   not an exception.

18        That is, again, a fairly concise amount of facts; that

19   while the government does not believe it's necessary to go in

02:19 20   in great detail for the reasons that it's argued, it's

21   perfectly reasonable to have a constrained hearing so that the

22   Court has -- is fully informed as to what took place there and

23   the nuances of what was seen by different people at different

24   times.  Obviously, there's photographs of that.

25        So, in sum, where this expands is the moment you get

1   into the whole history of what's going on and off the network,

2   which is not necessary to go into to resolve the matters before

3   the Court.

4           THE COURT:  What about the abandonment issue?

5           MR. HEYMANN:  Again, that's a physical question.  It's

6   a question -- these are the -- these are the -- differentiating

7   between what is happening, as it were, in the physical world,

8   what's being -- are there "no trespassing" signs up?  Where is

9   this closet?  How do you get into this closet?  Is it locked?

02:20 10   Is it not locked?  What do you see when you go in?  What did

11  the government do physically when it went in?  What did it see?

12  What did it know?  Did it open something?  Not open something?

13  Those set of physical facts are a different set of facts than

14  what was he doing on the network at the time, which is the

15  heart of the trial itself.

16          THE COURT:  All right.  I think I understand the

17  government's position.  You would then say that there ought not

18  to be any evidentiary hearing with respect to what expectations

19  of privacy, if any, a guest user obtained through access to the

02:20 20  MIT's network?

21          MR. HEYMANN:  We've certainly argued in, I think, our

22  fourth- or fifth-level argument with respect to the motion to

23  dismiss, No. 1, the motion -- motion to dismiss, I'm sorry --

24  motion to suppression, No. 1, that because he was a trespasser

25  on the network, he also didn't have any right of privacy.  But

1    that whole thing is resolved, I submit to the Court, at the

2    constitutional level and at the statutory level long before you

3    get down there.

4          THE COURT:  All right.  I'll give Mr. Peters a chance

5    -- a brief chance to rebut and tell me why what Mr. Heymann

6    says doesn't make good sense; in other words, have a limited

7    evidentiary hearing with respect to the physicality, if you

8    will, of trespass and/or abandonment but not beyond that.

9          MR. PETERS:  Well, first of all, the first point is

02:21 10   the issue about the delay on the search warrant, and what Mr.

11    Heymann said was --

12          THE COURT:  Why isn't that a matter of law?

13          MR. PETERS:  I think it could be a matter of law

14    because the law says that a delay of that amount in even

15    seeking a search warrant is a basis for a suppression.  Their

16    response is factual.  So I think if it were purely a matter of

17    law, then the Court would have to grant the suppression motion.

18    But the government's arguments against it are factual.

19          THE COURT:  You agree with that, Mr. Heymann?

02:22 20          MR. HEYMANN:  Your Honor, I don't agree with that.  I

21    think the -- the government's position, just to put the facts

22    on the table, is simply that there's a -- I ask Mr. Peters to

23    bear with me on this -- that there has been a theft of data

24    from JSTOR.  You can follow it down the wires.  It connects to

25    a laptop.  It connects to a hard drive.  There are pictures of

1  his client -- again, I ask him to bear with me -- getting this

2  laptop, getting this hard drive.  And for that reason, those

3  objects are physically evidence of the crime, and we could

4  simply seize it and keep them until trial for that reason, and

5  that distinguishes his whole line of cases.

6       But I think that this area is one that is so easy, in

7  the course of an evidentiary hearing, to put on what was found,

8  where, to be able to put on before the Court the evidence that

9  the wires coming down comes into the laptop, comes into the

02:23 10  hard drive, so that the Court has that image in front of it as

11  it's assessing the government's argument; to hear, to the

12  extent that the Court wants to, what's going on in the

13  investigation in the intervening time.  The government contends

14  it's not material, but the Court would have that evidence to

15  assess should it want to.

16       It's such a small piece that we should go ahead and do

17  it as part of the factual hearing that he's requesting.  I

18  don't think it's necessary.  I just think it's benign.

19       THE COURT:  All right.  Mr. Peters.

02:24 20       MR. PETERS:  It sounds like we agree that there should

21  be a hearing about that.

22       I just wanted to make one observation.  The argument

23  that this is a physical object, that the computer -- you know,

24  the computer's evidentiary significance is just because it's a

25  physical object, like a gun, say.  We just disagree with that,

1     your Honor.  The evidentiary significance of a computer is

2     what's inside it.  The evidence that they hope to offer is the

3     result of a search because -- which we claim was unlawful

4     because of the delay in getting the warrant, which took place

5     of the contents, the hard drive, what was on that computer.  If

6     all they wanted to offer was the fact that here's a computer

7     and put it into evidence, they wouldn't bother, and we wouldn't

8     have a problem.

9           What we're here moving to suppress is a search of the

02:24 10   hard drive and the extraction of a bunch of data off that

11    computer, which we contend took place in violation of the

12    Constitution because of the delay.  And the arguments that the

13    government's making, and I think that Mr. Heymann's

14    presentation kind of underscores that, are factual.

15          THE COURT:  All right.  I --

16          MR. PETERS:  But -- I'm sorry, your Honor.

17          THE COURT:  I thought you'd finished.  But go ahead.

18          MR. PETERS:  No.  I wanted to turn to the trespasser

19    issue and the expectation of privacy issue are also factual

02:25 20   issues that turn on access to the building, access to the room,

21    I mean, what happened in connection with the activities that

22    are alleged and then that give rise to the searches that took

23    place without a court order.  And I really don't hear Mr.

24    Heymann disagreeing with us about that either.  He keeps

25    talking about a narrow -- you know, a circumscribed hearing.

1    And we don't have any anticipation of coming into your Honor's

2    courtroom and trying to ask a lot of questions that aren't

3    directed to the appropriate matter of the hearing.  There may

4    be some overlap between issues that the jury would have to

5    determine and the issues that the Court has to consider in

6    connection with a suppression hearing, but I think that's

7    common in a criminal case when you have some constitutional

8    issues in a suppression motion.  But we would -- we're here to

9    focus on and litigate the issues presented by the motion.

02:26 10           THE COURT:  I think I've heard enough about that.  I

11    agree that the Court will have a limited, circumscribed

12    evidentiary hearing on the motions to suppress.  The Court is

13    entering into a time of unbelievably busy trials next month and

14    for the several months thereafter.  So I am -- this is not

15    going to be an unlimited hearing.  It's going to be limited in

16    time.

17           And, really, I've looked at my calendar before I came

18    on the bench, and the only day I have available in the next

19    time frame that would be appropriate for this is the last

02:27 20    Friday of January.  That's January 25th.  And the afternoon

21    thereof is what I am going to make available for this hearing.

22    In other words, it's not going to exceed three hours or so;

23    and, therefore, the time will have to be divided between the

24    two parties so that you can order whatever facts you want to

25    get before me in such a way as to allow your opponent equal

1    time but get it done in three hours.  So we'll start either at

2    -- I suppose we could start at 1:00 on Friday, January 25th.

3    And we will be done with this hearing before the end of the

4    afternoon, hopefully, by 4:00 but, if not, before 5:00.

5        And the issues, I am going to limit to what Mr.

6    Heymann outlined with respect to the delay in getting the

7    search warrant and the facts that he believes will demonstrate

8    the appropriate behavior of the government; the trespass issue

9    and what I have defined as the abandonment issue, involving the

02:28 10   computer that was left in the closet.  I don't know whether

11   that will actually get around to a concern of the objectivity

12   of the reasonable expectation of privacy, but I'm not going to

13   decide that right at this moment.  But the hearing is, I think,

14   obviously going to be a limited one, and we will then go

15   forward from there.

16       I understand that both sides feel that at that stage a

17   trial on February 4th is going to be impossible.  I agree with

18   that, but I also have to forewarn counsel that my schedule over

19   the next six months is so busy that I don't have a lot of

02:29 20   options.  And I'm not going to put this trial off until June,

21   as requested by the defendant.  There's no reason for a

22   six-month delay.  There is reason for some delay.

23       With respect to the request of designating experts, I

24   think that was one you wanted until the end of February.  I'm

25   going to split the difference with you, Mr. Peters, and give

1   you till -- maybe till the date of the hearing that we're going

2   to have, January, to designate your experts.  But the trial --

3   the only day that I'm going to be able to afford for this trial

4   that's not February 4th which, of course, we've blocked out, is

5   the very first day of April, April 1st, which is a Monday.  I

6   don't know how long this trial is expected to last.  What is

7   your best guess, Mr. Heymann?

8          MR. HEYMANN:  Less than two weeks -- less than ten

9   trial days, but how many depends on the defense case and how

02:30 10   much cross-examination.  But we certainly can accomplish it

11   within ten days.

12          THE COURT:  Mr. Peters.

13          MR. HEYMANN:  Ten trial days.

14          MR. PETERS:  That sounds right, your Honor.

15          THE COURT:  Okay.  That's what I intend to do.  Is

16   there any problem with the expressed intentions of the Court?

17   Mr. Heymann?

18          MR. HEYMANN:  First of all, with respect to

19   scheduling, I already conferred with my co-counsel, Mr. Scott,

02:30 20   who -- Mr. Scott -- Mr. Garland, Scott Garland, who couldn't be

21   here today, and that works fine with both of our schedules.

22          And when the Court said the trespass issue, I just

23   want to make sure I'm focused -- are we focusing on the

24   physical trespass.

25          THE COURT:  Yes.  We're focusing on the physical

1    trespass, not the computer aspect of it.

2            MR. HEYMANN:  Okay.  Thank you.

3            THE COURT:  Mr. Peters.

4            MR. PETERS:  Your Honor, I'm just double-checking my

5    calendar.  I turned off my device in court because I find it

6    always rings if I leave it on.  So I think it's silenced, so I

7    just turned it off.  If your Honor could just bear with me.  I

8    think that those dates are fine with me, but I just wanted to

9    double-check.

02:31 10            THE COURT:  Yes.  I'll give you a minute.

11            MR. PETERS:  Your Honor, thank you for your patience.

12    Those dates are fine with us.

13            THE COURT:  I perhaps cut you off, Mr. Peters, when we

14    were discussing the potential issue of what expectations of

15    privacy, if any, a guest user obtained through access to the

16    MIT's network and whether or not that would necessarily be a

17    subject matter of any evidentiary hearing.  Had you completed

18    your remarks in that regard?

19            MR. PETERS:  I think I had, your Honor.  The only

02:33 20    source of some confusion in my mind was that I heard Mr.

21    Heymann say -- and I'm trying not to put words in his mouth,

22    but the evidence about the packet capture may not be used

23    because, in the motions, there were certain things in the

24    government's opposition that they clearly identified and said,

25    We're not going to put that in in our case in chief.

1        THE COURT:  I think he just repeated that here today.

2        MR. PETERS:  The packet capture wasn't one of those

3    things.  I just wanted to know whether that was a different

4    position.

5        THE COURT:  Mr. Heymann.

6        MR. HEYMANN:  No.  To be -- at the risk of restating

7    it to be clear, the government does not intend to offer in its

8    case in chief any of the evidence that was obtained through the

9    packet capture.  And I just want to be clear as to which packet

02:33 10    capture in case that's an issue.  On January 4th when the

11    computer -- when the laptop computer was found, first MIT on

12    its own, as we understand it, though there's a little bit of

13    ambiguity about that, and then certainly shortly thereafter

14    with the approval of the government, started monitoring, making

15    an exact duplicate of all the communications going back and

16    forth to the Acer laptop for a day.  Those communications,

17    which we've referred to in the briefing as the packet capture,

18    are not going to be offered in evidence in the government's

19    case in chief.

02:34 20        I want to just be very clear that we are intending to

21    offer significant amounts of the information that shows the

22    routing information, the tracking information, the sign-on

23    information, all of the non-content information.  But the

24    government --

25        THE COURT:  The so-called pen register information?

1          MR. HEYMANN:  Part of it -- I refer to it as pen --

2     the computer version of pen register information.  But it's

3     also like, when somebody signs on and they say, My name is such

4     and such and my address is such and such, they're providing

5     information.  That non-content information, or that information

6     voluntarily given to the network, we do intend to offer.

7          THE COURT:  Okay.  I think that's clear.

8          MR. PETERS:  It is clear now, your Honor.  Thank you.

9     And so I do think the issue of a reasonable expectation of

02:35 10     privacy as part of Fourth Amendment standing then isn't in play

11     with respect to the access to the computer system.

12          THE COURT:  Now, before we adjourn, you have filed a

13     separate matter, but -- you have filed a motion to dismiss, Mr.

14     Peters, the fraud count -- actually, the two counts that have

15     -- that relate in that regard.  Rather than schedule another

16     hearing -- you may not be prepared today, but I would hear both

17     sides briefly if you wish to supplement the papers that you

18     have filed with the Court with respect to the motion to

19     dismiss, which is No. -- Docket No. 64, the wire fraud counts.

02:36 20     Do you wish to supplement your papers at all, Mr. Peters?

21          MR. PETERS:  No, your Honor.  We'll submit the matter

22     based on the papers that we filed.

23          THE COURT:  All right.  Mr. Heymann?

24          MR. HEYMANN:  As will we, your Honor.

25          THE COURT:  Fine.  I will take that matter under

1    advisement and try to resolve that as -- in due course, before

2    the hearing of the -- involving the motions to suppress.

3            Is there anything else that needs to come to my

4    attention before we recess for the day.

5            MR. PETERS:  Only that in light of the Court's busy

6    schedule that you have a happy holiday.

7            THE COURT:  Thank you.  You too.

8            MR. HEYMANN:  Thank you, your Honor.

9            THE COURT:  I take it you're not here for ulterior

02:37 10    motives, to attend the football game on Sunday night?

11            MR. PETERS:  I don't want to get myself in trouble

12    with anybody.  Actually, your Honor, I'm hoping to go back and

13    attend my law firm's Christmas party in San Francisco this

14    evening.

15            THE COURT:  I think that's a better choice for a 49ers

16    fan.

17            MR. PETERS:  It should be a heck of a game, though.

18            THE COURT:  Thank you, counsel.  We have another

19    hearing.

02:37 20            MR. PETERS:  Thank you very much, your Honor.

21    (Whereupon, at 2:37 p.m. the hearing concluded.)

22

23

24

25

1                    C E R T I F I C A T E

2

3

4             I certify that the foregoing is a correct transcript

5    of the record of proceedings in the above-entitled matter to

6    the best of my skill and ability.

7

8

9

10

11

12   /s/Cheryl Dahlstrom          02/22/2013

13   Cheryl Dahlstrom, RMR, CRR   Dated

14   Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25